PECOS & N. T. RY. CO. v. FRANCIS.

(Court of Civil Appeals of Texas. San Antonio. June 7, 1911.)

CARRIERS (§ 207*)—CONTRACT TO FURNISH CARS—OFFER AND ACCEPTANCE—BREACH.

In an action against a carrier for damages arising from its alleged breach of a contract to furnish cars for the shipment of plaintiff's cattle, evidence that plaintiff asked the carrier's agent if he could furnish 13 cars at once to ship cattle, to which he replied he could not, but could furnish them on September 7th following, etc., and that he did not remember promising plaintiff cars on any particular day because he did not know when he could get them, did not show a meeting of minds, and was insufficient to establish a contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 129–239; Dec. Dig. § 207.*]

Appeal from District Court, Hale County; L. S. Kinder, Judge.

Action by J. L. Francis against the Pecos & Northern Texas Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills and Madden, Trulove & Kimbrough, for appellant. Martin & Zimmerman, for appellee.

NEILL, J. This appeal is from a judgment of $5,776.92 damages recovered by appellee against the appellant for an alleged breach of contract by the latter to furnish the former cars at the time and place agreed upon for the shipment of cattle.

It was alleged in plaintiff's first amended original petition that on August 28, 1907, he was the owner of 389 head of beef cattle in Brisco county, about 22 miles from Plainview, Tex., a station on defendant's line of railway, which he desired to ship from said station over its line of road to Kansas City, Mo., for market; that on said date he entered into a verbal contract with defendant, through its agent at Plainview, whereby it agreed to furnish him at said station 13 cars at the customary charges to be paid by plaintiff for the transportation of said cattle from thence to Kansas City; that on September 5, 1907, plaintiff informed the company's agent at said station that he would have the cattle there on September the 7th in accordance with the terms of said contract, whereupon he was informed by the agent that defendant could and would not furnish the cars on that date as it had agreed to do, and, in violation of said agreement, appellant failed and refused to furnish them at that time, though it had promised and agreed to have them there for him on the 14th of that month; that prior to the time last mentioned defendant informed plaintiff that it would not furnish the cars at that time and violated its prior promise to do so; that each and every week thereafter, until October 12, 1907, defendant promised and agreed to furnish the cars on Saturday of each intervening week; that defendant kept plaintiff waiting all that time for the cars to be furnished in accordance with defendant's agreement and promises as aforestated; that on October 5, 1907, defendant promised and agreed to furnish plaintiff said number of cars and instructed him to have the cattle at Plainview on October 12, 1907, informing plaintiff that the cars would be there ready for him on that date; that thereupon plaintiff, relying upon the aforesaid promises and agreements and acting under said instructions, drove all of said cattle from his ranch in Brisco county to Plainview, arriving there on October 11, 1907, and tendered them with the freight charges to defendant for transportation; but that defendant, in violation of its contract and agreement and contrary to its instructions to plaintiff, failed and refused to furnish him the cars; that defendant, through its said

agent, instructed plaintiff to remain in Plainview with his cattle, informing him that the cars were expected every minute and were likely to arrive at any hour and be ready to load his cattle, and requested him not to leave the town with them; that such representations and instructions were persistently and continuously made 'by defendant's agent from the 12th to the 28th of October, 1907, by reason of which plaintiff remained with his cattle in Plainview during all that time, persistently demanding the cars and receiving assurances from defendant that he would get them immediately; that, notwithstanding plaintiff remained there with his cattle continuously for 16 days, defendant violated its agreement and promises, failing and refusing to furnish the cars or any of them until October 28th, when plaintiff was forced and compelled to return with his cattle to his ranch in Brisco county; that during the 16 days plaintiff was compelled to constantly hold his cattle under herd with insufficient feed for them, during a part of the time in a downpour of rain and cold weather, by reason of which and the long drives to and from his ranch the cattle were greatly depreciated in weight, appearance, and marketableness; that on October 28, 1907, defendant ·again promised and agreed to have the cars, which it had theretofore contracted to furnish on the 7th of September, at Plainview for him on November 30, 1907, and that he drove his cattle there, arriving with them on the 29th of said month, and was compelled to remain until December 1st following, before the cars were furnished and the cattle loaded; that they were shipped on that date and started to Kansas ·City in pursuance of the contract made, as aforesaid, with defendant on August 28, 1907, and subsequent contracts mentioned, and arrived at destination on December 4, 1907, and were worth and sold for on the market that day the sum of $12,305; that all of the aforesaid contracts, agreements,.and promises were a continuance of the original contract made between plaintiff and defendant on August 28, 1907; that plaintiff was ready, willing, and able at all times to pay the freight on said cattle from the town of Plainview to Kansas ·City, and tendered it such freight charges on October 12, 1907; that there was a constant decline in the market at Kansas City from September 10, 1907, the day plaintiff's cattle ought to have been on the market under said contract, until December 4, 1907, which decline on the class and kind of cattle such as plaintiff's amounted to $1.25 per hundred weight; that, by reason of the aforesaid conditions and the long delay and drives mentioned, his cattle shrank about 100 pounds per head beyond the ordinary shrinkage in such cases, to plaintiff's damage in the sum of $5 per head; that his cattle depreciated in appearance and marketableness by reason of the promises until they were worth at the time they were sold about $5 per head less than they would have been

worth had they sold at any time prior to October 16, 1907; that the proximate and direct cause of all plaintiff's damages above mentioned was the defendant's failure to furnish him the cars as it had contracted; that had the cars been furnished according to the contract at any time prior to October 20, 1907, plaintiff's damage would not have been more than half of what is above alleged; that most of the decline market, depreciation in weight, and marketable appearance, as well as all other damages mentioned, occurred after October 20, 1907. Other items of damages are averred, which we deem unnecessary to state, the aggregate amount averred being $17,500.

The defendant's answer contains a number of special exceptions, pleas to the jurisdiction of the court, a general denial, special denials, pleas setting up new matter in avoidance of plaintiff's action, etc.

### Conclusions of Fact and of Law.

As a number of the assignments of error insisted on embrace 'both matters of fact and law, it is deemed most expeditious and methodical to state the conclusions· we have reached, whether of fact or of law, under the several assignments which involve them.

1. The first assignment complains that the court erred in overruling the sixth paragraph of defendant's motion for a new trial. Under this assignment the appellant contends (1) that there is no evidence to support the finding, which is involved in the verdict, that appellant made a "binding contract" to furnish appellee cars for the shipment of his cattle on September 7, 1907; (2) that the finding of the jury that appellant made a contract with appellee to furnish him cars for the shipment of his cattle on September 7, 1907, is contrary to the great weight and preponderance of the evidence; and (3) that, if a contract was made on the 28th of August, it was an executory contract of a unilateral nature, and was before performance became due by the consent of the parties so changed from time to time that performance did not become due until November 30, or, at any rate, until ·October 12, 1907. Each of these contentions is urged as a distinct proposition. We need not cite authorities to show that a railroad company's station agent has the authority, or that it is within the scope of his apparent authority, to contract in behalf of his principal with one desiring to ship freight over its line of road to furnish cars at the station of which he is in charge and managing the 'business of the company to him wishing to make the shipment for the ·desired purpose at a time specified; and that, in the absence of a restriction known to him who desires the cars for that purpose, such contract· may 'be verbal as well as in writing. It is not denied by the appellant that J. N. Cole was its station agent at Plainview, Tex., on August 28, 1907, and from that time continuously until along in December of that year.

Nor is Cole's authority to make such a contract with the appellee in behalf of the appellant in any way controverted. The question is not as to Cole's agency or authority to make the contract, nor as to its terms, if made, but the sole question is one of fact: Did the appellant, through its agent, Cole, make a contract with appellee to furnish him cars at Plainview on September 7, 1907, for the transportation of his cattle from that place to Kansas City, Mo.? If such contract was made, then it is undisputed that the appellant wholly failed in its performance. While the burden of proving the affirmative of this issue was upon the appellee, if there were any evidence tending towards its proof, it was the duty of the court to submit its finding to the jury, and, unless its verdict should be manifestly against the clear preponderance of the evidence, to sustain and render judgment in accordance with it.

The appellee, Mr. Francis, testified upon this issue as follows: "I knew Mr. Cole in the year 1907. He acted as agent for the Santa Fé in the fall of 1907 at Plainview. I owned in the fall of 1907 some three year old steers that I desired to ship. * * * I went to J. N. Cole on the 28th day of August, to see if I could ship them out on the 30th day of August. I wanted to ship them then, but he failed to furnish the cars. He said that he couldn't furnish them then, but that he could furnish them on the 7th of September. I told him that if he couldn't furnish them that I would go to the nearest point where I could get cars and ship them, and he said that he could furnish the cars as quick as any one else. He said, 'I am satisfied that I can have them on the 7th of September,' and told me on the 28th of August that he would have the cars for me on the 7th of September." On cross-examination Mr. Francis testified as follows: "I first saw Mr. Cole with reference to this shipment on August 28th. He was at the stockpens loading cattle when I saw him * * * at Plainview. I had known Mr. Cole before that. * * * I spoke to Mr. Cole first on the 28th of August. * * * I asked him what would be the chance for getting a shipment of cattle out on the Saturday following the 28th day of August. The 31st day of August was when I wanted to go out. I went to Mr. Cole, and told him that I wanted 13 cars to ship out some beef steers to market, and wanted to get them out at a certain time, and I wanted to ship out on the Saturday following. He said that he couldn't furnish the cars on the 31st day of August, but that he was satisfied that he could have them on the 7th of September. I told him that, if he couldn't get them on that day, * * * then I would try to get them from some other point. He said he was satisfied that he could have the cars on September 7th. That was all he said at that point. I told him that if he couldn't have the cars on the 7th, that I wanted to ship the cattle

then, and, if he couldn't get them by that time, I would take them to the Denver. He said that he could get the cars for me as soon as any one could. I told him if he could that I would rather ship from this point. That is the substance of what passed between us at that time. My object was to ship out on a Saturday so as to reach the Kansas City market on Monday or Tuesday. I didn't see Mr. Cole any more until Thursday, September 5th. He was at the depot when I saw him then. * * * I opened up the conversation between us this time. I asked him if he had the cars for me * * * I asked him if he would have the cars for the 7th. * * * He said that he would see and he wired to Amarillo to see about it. I waited around there an hour and a half or two hours, I don't know. He said that it would take from an hour to two hours to find out. * * * I went back to the depot after an hour or two hours—after I thought he had had a reasonable time to find out. He said he couldn't get the cars. He said he wouldn't be able to furnish the cars on the 7th, but he said he would be able to furnish them on the 14th." On being recalled, he testified upon this issue as follows: "Immediately before I left J. N. Cole, agent, for home, I asked him when he would have the cars, and he told me that he would have the cars on the 7th." On cross-examination the witness testified as follows: "As I testified a moment ago, the last thing that Cole said to me was that he could get the cars as soon as anybody else, and that ended the conversation at that time. I don't recollect if I testified on cross-examination about 20 minutes ago that that was the last thing that Cole said to me on the 28th day of August. I started to tell you two or three times, and you cut me off. I answered the question direct before and you cut me off. I said a minute ago that that was the last thing that occurred between myself and Cole on the 28th day of August at that time. * * * I was around there for some little bit. I talked to him several times during the day. You cut me off by not letting me answer before. My counsel didn't ask if I saw Cole. I told him a part, but I didn't tell him all that occurred. I did not tell my counsel about this closing remark that I now say Cole made. It isn't a fact that it didn't occur to me to say that until the conference that I have had with my attorneys. I would have said that a while ago if you had let me. I realize that I am under oath, and that I have been testifying on oath as to it. I have said it once and I will stick to it, although I didn't say anything about it in my direct examination, and in my cross-examination." On redirect examination the witness testified as follows: "I have already told my counsel like I have testified."

J. N. Cole testified by deposition for appellant that he was station agent for appellant at the time in question, and further testified

as follows: "I have no recollection of making an agreement with the plaintiff to furnish cars to him on any certain date. * * * At the time plaintiff made his application for cars, I informed him of the shortage of the cattle cars, and told him that the company was behind with cars, that it was uncertain as to when the cars could be had. I do not remember to have promised him to furnish him cars on any particular day, for the reason that at that time cars were short, and I did not know when I could get them." The witness further testified that his present residence is Dalhart, Dallam county, Tex.

This is substantially all the testimony upon whether the alleged contract was made between the parties. Does it show or reasonably tend to show that such contract was made? If not, there is an end of the case. A contract consists of an actionable promise or promises. Every such promise involves two parties, a promisor and a promisee, and an expression of common intention and of expectation as to the act or forbearance promised. Every expression of a common intention arrived at by two or more parties is ultimately reducible to question and answer. In speculative matters this would take the form, "Do you think so and so?" "I do," but for the purpose of creating obligations it may be represented as, "Will you do so and so?" "I will." The first does not create a contract. If no essential element is lacking, the other does. Anson on Contracts, 19, 20. When the testimony above recited is analyzed, reduced to, and tested by these formulas, it takes the form of the former rather than the latter. It is this, "Can you furnish me thirteen cars now to ship my cattle from here?" "No; but I am satisfied that I can furnish them by September the 7th." If the question, "Shall I furnish you the cars on the 7th of September?" could be evolved from the testimony, can the answer, "Yes," be deduced from it? If not, then there is no common intent shown between the parties, no aggregatio mentium or mutual assent, and the defendant would be under no obligation to furnish the cars at that time and place, and the plaintiff under no promise to have his cattle there for shipment. But the evidence is not sufficient to show that the defendant ever told the plaintiff that it could have the cars in Plainview at that time or at any given date. Its agent merely told him that he was satisfied that he could get them there by that time. This at best is the only reasonable deduction from the testimony. But, let it be conceded that defendant's agent told plaintiff that he could get them there at that time, there is no evidence tending to show that the plaintiff regarded such statement as a promise, or that, if he did so regard it, he accepted it and on his part intended to deliver appellant his cattle for shipment at that time in said cars.

There was no offer nor acceptance of an offer, either express or implied, shown by the evidence, between the parties. Hence the contract alleged by plaintiff was not proved, from which it follows that the verdict was without evidence to support it, and it should have been set aside and the motion for a new trial granted for that reason.

This requires a reversal of the judgment and renders the consideration of the remaining assignments unnecessary.

Reversed and remanded.